## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF TENNESSEE

### AT THE

## NASHVILLE, DECEMBER TERM, 1919.

---

ERNEST ALLEN et al. v. JOSEPH H. CUNNINGHAM.*

(*Nashville.* December Term, 1919.)

1. INSURANCE. Member of benefit society held under evidence mentally competent to change beneficiaries.

In an action on mutual benefit certificate between former beneficiaries and beneficiary at time of member's death, evidence *held* to show that member was a person of sound mind at the time she changed beneficiaries. (*Post, pp.* 11-21.)

2. INSURANCE. Evidence held sufficient to show that change of beneficiaries was procured through fraud.

In action on mutual benefit certificate between former beneficiaries and beneficiary at time of the member's death, evidence *held* insufficient to show that the issuance of the new certificate changing the beneficiaries was secured through fraud or imposition on the part of the person named as beneficiary in new certificate. (*Post, pp.* 21-24.)

Cases cited and approved: Wilson v. State, 100 Tenn., 596; Goodall v. Thurman, 38 Tenn., 209.

Code cited and construed: Sec. 3369a 82 (S.)

---

*On right to recover premiums paid on policy which is invalid for want of insurable interest, see notes in 3 B. R. C., 839; L. R. A., 1917A, 477.

The question as to who are "dependents" within statute or rules defining beneficiaries of mutual benefit societies, is discussed in notes in 2 L. R. A. (N. S.), 653; 36 L. R. A. (N. S.), 208; 37 L. R. A. (N. S.), 1191 and 51 L. R. A. (N. S.), 726.

On rights and remedies of prior beneficiary where insured was mentally incompetent when he made a change of beneficiaries, or a change was accomplished by fraud or undue influence, see note in L. R. A., 1916C, 1132.

3. **INSURANCE.** Husband of deceased daughter not a "son-in-law" within statute providing that "son-in-law" may be beneficiary.

The husband of a deceased daughter is not a "son-in-law" within Shannon's Code, section 3369a82, entitling member of mutual soci-. ety to name "son-in-law" as beneficiary of death benefit certificate; the relationship of son-in-law and mother-in-law terminating upon the death of the daughter. (*Post, pp. 24, 25.*)

4. **INSURANCE.** Husband of deceased daughter held not a "dependent" on mother within statute relating to beneficiaries.

Where mother upon death of daughter with whom she has been living continued to live with daughter's husband upon whom she depended for her support and maintenance, the husband was not a "dependent" upon the mother within Shannon's Code, sections 3369a82, providing that a "dependent" may be named as beneficiary in death benefit certificate, on the theory that the mother looked after his household affairs, saw that his meals were prepared, etc.: she being under no legal or moral obligation to do so. (*Post, pp. 25, 26.*)

Cases cited and approved: Caldwell v. Grand Lodge of United Workmen, 148 Cal., 195; McCarthy v. Supreme Lodge, etc., 153 Mass., 314; Palmer v. Welch, 132 Ill., 141.

Case cited and distinguished: Ownby v. Supreme Lodge K. of H., 101 Tenn., 16.

5. **INSURANCE.** Improperly appointed beneficiary held entitled to equitable lien for assessments paid.

Where a member of mutual benefit society lived with her married daughter, whose husband supported and maintained the member, paid her assessments, and continued to so do after daughter's death, and where at time of the member's death the husband had paid out in assessments more than $3,800 to keep a $4,000 certificate in force, the husband, on being denied the right to recover proceeds of the certificate as beneficiary because of absence of insurable interest, will be given equitable lien on the proceeds for the amount paid by him in assessments with interest thereon, notwithstanding Stannon's Code, section 3369a111. (*Post, pp. 26-29.*)

Cases cited and approved: Westall v. Wood, 212 Mass., 540; Insurance Co. v. Dunscomb, 108 Tenn., 724; Bendet v. Ellis, 120 Tenn., 277; Quinn v. Catholic Knights, 99 Tenn., 80.

Case cited and distinguished: Milam v. Milam, 138 Tenn., 686; Brown v. Bigley, 3 Coopers Chan., 618.

Allen v. Cunningham.

Code cited and construed: Sec. 3369a111 (S.).

6. **INSURANCE.** Statute as to exemption of benefit payable by mutual society from attachment, etc. construed.

Shannon's Code, section 3369a111, providing that no money or other benefit to be paid by mutual benefit society shall be liable to attachment garnishment, or be applied by any legal or equitable process or operation of law to pay any debt or liability of member or beneficiary or any other person, who may have a right thereunder, either before or after payment, *held* not to preclude equity from granting an equitable lien on proceeds of death benefit certificate to improperly appointed beneficiary for assessments paid by such beneficiary; such statute having reference only to general and ordinary debts of the insured or beneficiary, and not to assessments or money paid by which the benefit is created and made possible, in view of Shannon's Code, sections 2265, 4030. *Post, pp.* 29, 30.)

Acts cited and construed: Acts 1875, ch. 142;    Acts 1845-46, ch. 216.

Code cited and construed: Secs. 2265, 4030 (S.).

7. **COSTS.** Taxable one-half against both parties on court affirming on appeal by both parties.

Appellate court in affirming decree from portions of which both parties appealed will tax one-half of the costs against both of the parties. (*Post, p.* 30.)

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —HON. JAMES B. NEWMAN, Chancellor.

J. R. WEST and JORDAN STOKES, JR., for appellants.

EDWIN A. PRICE, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

This is a contest between the complainants and the defendant Joseph H. Cunningham as to who is entitled to the proceeds of a certain benefit certificate issued by the defendant United Order of the Golden Cross of the World (a mutual benefit society) on the life of Mrs. Sarah J. Allen for the sum of $4,000.

Mrs. Allen died a resident of the city of Nashville, Davidson county, Tenn., leaving as her only surviving children and heirs at law the complainants, Ernest and Charles B. Allen. Soon after her death the complainant Ernest Allen qualified as the administrator of his mother's estate, and filed the bill in this cause, both in his representative and individual capacities, and in which bill his brother, Charles B., also joined as complainant.

It appears that, some time prior to the year 1890, Mrs. Allen secured a benefit certificate in the United Order of the Golden Cross of the World, of which she was a member in good standing, for the sum of $4,000. She had named in this certificate, as sole beneficiaries, her three children, the complainants, Ernest and Charles B. Allen, and her daughter, Allie L. Allen. The daughter married the defendant Joseph H. Cunningham, in 1890. After the marriage of the daughter to the defendant Cunningham, Mrs. Allen became a member of the Cunningham family, continued to live with her daughter and son-in-law until the death of the daughter in September, 1915, after which time, it being her daughter's wish that she do so, she continued as a member of

defendant's family until her death, which occurred in December, 1916.  During the time that Mrs. Allen lived in the home of the defendant Cunningham, she was entirely cared for and supported by him, she being without means to support herself.  It appears that the relations between the two were at all times cordial, pleasant, and affectionate, and they were apparently devoted to each other.

After the marriage of the defendant Cunningham to the insured's daughter, for a short time, he paid one-half of the assessments due on the benefit certificate held by Mrs. Allen, after which he began paying all of the assessments due on said certificate for Mrs. Allen, and continued so to pay them up until her death, thus keeping the certificate in force.  When he first began paying the monthly assessments, they were $3.82, but thereafter were gradually increased until they reached the sum of $24.35, and thus remained for the last five or six years of her life. Mrs. Allen knew that defendant was paying these assessments on said certificate for her, and often expressed her appreciation for his kindness in doing so; she being without money to pay them.

After the death of defendant's wife in September, 1915, Mrs. Allen had the certificate, in which her daughter was named as beneficiary, canceled and a new one issued, in which she had the defendant Cunningham named as the sole beneficiary, and this certificate was in force at the time of her death, and the defendant Cunningham paid the assessments on it up to the time of Mrs. Allen's death, believing that the designation as to the beneficiary was

valid and sufficient to pass the benefit of said certificate to him upon the insured's death.

The evidence shows that the consideration prompting Mrs. Allen to have said certificate made payable to defendant was that he had paid the assessments on it and had kept it in force since soon after his marriage to her daughter in 1890, and she wanted him reimbursed for the payments so made; the amount of the assessments paid by defendant between the date of his marriage to the insured's daughter and the date of the daughter's death was more than $3,000, and including those paid by him after the new certificate was issued, in which he was named as beneficiary, amounted to $3,852.

It appears that the certificate naming defendant as beneficiary was immediately after its issuance delivered to him by Mrs. Allen, and he held the same at the time of her death; and after Mrs. Allen's death he caused proper proofs of her death to be made to the defendant order, who was about to pay the same to defendant, when enjoined from doing so by the injunction issued under the prayer of complainant's original bill.

Complainants resist the right of defendant to collect and receive the money due and payable under said certificate, in their original bill, on the ground that he had, at the time he was named as beneficiary in said certificate, no insurable interest in the life of the insured, and was not, therefore, eligible to be named as beneficiary in said certificate; and they claim the proceeds of said certificate as the children and only heirs at law of Mrs. Allen. The daughter, Mrs. Cunningham, died without issue.

In their amended and supplemental bill filed on July 27, 1917, complainants resist payment to the defendant upon the further ground that, at the time the certificate issued naming the defendant beneficiary therein, the insured, Mrs. Allen, was of unsound mind and mentally incapable of consenting to a change in beneficiaries; that she had been addicted to the use of morphine for many years before said change in beneficiaries was attempted to be effected; and that the use of said drug had so affected and impaired her mind that she was incapable of comprehending and understanding any business transaction, and was, therefore, incapable of understanding the nature and effect of her act when she consented that the defendant be named as beneficiary in said certificate, if she did so consent; and that she was procured and induced to consent to said change by the fraud and imposition of the defendant, in whose home she had lived for many years before her death, and who had been administering to her the drug which had affected and impaired her mind.

The original and amended and supplemental bills prayed that a decree be rendered in complainants' favor against the defendant order for the amount of said certificate, together with interest and penalties.

The defendant Cunningham filed an answer and cross-bill. In his answer he denied that he was without insurable interest in the life of the insured, Mrs. Allen, at the time he was named as beneficiary in said certificate; denied that he was ineligible to become beneficiary in said certificate, that said certificate naming him as beneficiary

143 Tenn.—2

was not legally issued, or that the same was invalid and ineffective to vest the benefits of said certificate in him upon the death of the insured. He also denied that the insured was of unsound mind, and incapable of fully understanding and comprehending what she was doing, when she directed and consented that said certificate be changed so as to name him beneficiary therein, and averred that she fully understood and comprehended the nature and effect of the transaction and of her act, and that the naming of defendant as the beneficiary in said certificate was in accordance with her direct order, and in accordance with her expressed desire that he receive the benefits of said certificate, because he had kept the assessments paid on it and had kept the certificate alive and in force; and, further, that the change and naming of defendant as beneficiary in said certificate was in accordance with the often expressed desire of the insured's daughter, defendant's wife, to whom the insured was greatly devoted.

Defendant also specifically denied the allegations of the amended and supplemental bill with respect to fraud and imposition practiced by him on the insured in order to procure and induce her to change said certificate and have it made payable to him as beneficiary. He denied that he administered to the insured morphine, or that he knew that the insured was addicted to the use of morphine until a few weeks before her death.

The cross-bill prayed that defendant be given a decree for the amount due under said certificate; but if for any reason the court should be of the opinion that he was not

entitled to a decree for the proceeds of said certificate as beneficiary, that he be reimbursed out of its proceeds for the full amount of the assessments paid by him for the insured to keep said certificate in force; and that an equitable lien be declared in his favor on said proceeds; and that the amount of the assessments so paid by him be first ordered paid to him out of the proceeds of said certificate.

The defendant United Order of the Golden Cross of the World answered the original and amended and supplemental bills filed by the complainants, as well as the cross-bill filed by the defendant, admitting the death of Mrs. Allen; that she died a member of said order in good standing, and held the certificate for $4,000 in said order naming the defendant as the sole beneficiary; that proper proofs of the death of Mrs. Allen had been made; that it was liable for the face value of said certificate, and was ready and willing to pay the amount thereof to the person or persons legally entitled thereto. It further answered that the certificate was issued strictly in compliance with the laws of the land and the laws of the order, and for that reason the contract should be carried out as made by the parties. It paid the proceeds of said certificate into court to be held subject to the court's order.

The cause coming on to be heard before the chancellor upon the pleadings and proof, a decree was rendered adjudging that the complainants were entitled to the proceeds of said certificate, subject to an equitable lien in favor of the defendant for dues and assessments paid by him on said certificate, whereby it was kept in force, to-

gether with interest from December 29, 1916, the date of the death of the insured, which dues and assessments, together with interest from said date, amounted to $4,430.02, and declared said amount a lien on the proceeds of said certificate in the hands of the clerk and master, and the clerk and master was directed to apply the proceeds of said certificate:

(1) To the payment of the costs of the cause.

(2) To the satisfaction of said sum of $4,430.02, due the defendant.

(3) The remainder of said fund, if any, to the complainants.

The complainants excepted to so much of said decree as adjudged the defendant was entitled to be reimbursed out of the fund in court for the amount of the assessments paid by him on said certificate, together with interest from the date of the death of the insured, and was entitled to an equitable lien on the proceeds of said certificate, and ordered the amount of said assessments so paid by the defendant, together with interest, to be paid to him out of the proceeds of said certificate; and from so much of said decree they appealed to this court, and have assigned errors.

The defendant Cunningham excepted and appealed from so much of said decree as adjudged that complainants were entitled to or had any interest in the proceeds of said benefit certificate, and has assigned error on this branch of the chancellor's decree.

Allen v. Cunningham.

By the first assignment of error it is insisted by complainants that the chancellor erred in holding that Mrs. Allen (the insured) was a person of sound mind at the time said benefit certificate was issued naming the defendant as beneficiary therein.

We are of the opinion that this contention is not well grounded. We think the great preponderance of the evidence clearly shows that Mrs. Allen had sufficient mental capacity to transact business, and fully understand the nature and effect of the transaction by which the certificate in force at the death of her daughter was canceled and the new certificate was issued, in which the defendant was named as beneficiary; and that she directed the issuance of the new certificate, in which the defendant was named as beneficiary, in consideration of the defendant having paid the assessments on said certificate for many years, and she desired that he be reimbursed for the payments so made.

It appears from the testimony of 16 witnesses testifying on behalf of the defendant—all of whom appear to be disinterested, and consisting of her neighbors and intimate acquaintances, who saw and conversed with her frequently—that she was a person of sound mind at the time said transaction was had. Included in this number is the testimony of Dr. Banks, her family physician, who testified that Mrs. Allen was at all times in possession of her mental faculties, and that he never observed anything wrong with her mind. While it does appear that Mrs. Allen had used morphine for many years before her death,

the preponderance of the evidence is that she had not used it to such an extent as to perceptibly affect her mind. Nor does the evidence show that the issuance of the new certificate was secured through fraud or imposition upon the part of the defendant.

It is next insisted by complainants that the chancellor erred in holding that the defendant was entitled to be reimbursed for the assessments paid by him on the certificate held by Mrs. Allen out of the proceeds thereof, and was entitled to have the amount so paid by him declared an equitable lien on the proceeds of said certificate and paid therefrom.

Before disposing of this assignment of error, we will dispose of one made by the defendant on that branch of the decree holding that defendant could not take as beneficiary because he was without an insurable interest in the life of Mrs. Allen.

It was urged in the court below by the complainants that the defendant Cunningham was not entitled to the proceeds of said benefit certificate as beneficiary, because, under the statute (Shannon's Code 1917, section 3369a82), he could not be named as beneficiary in said certificate, having no insurable interest in the life of the insured. By this statute it is provided as follows:

"The payment of death benefits shall be confined to wife, husband, relative by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepfather, stepmother, stepchildren, children by legal adoption, or to a person or persons dependent upon the member; pro-

vided, that, if after the issuance of the original certifi-
cate, the member shall become dependent upon an incor-
porated charitable institution, he shall have the privilege,
with the consent of the society, to make such institution
his beneficiary.  Within the above restrictions each mem-
ber shall have the right to designate his beneficiary, and
from time to time have the same changed in accordance
with the laws, rules, or regulations of the society, and no
beneficiary shall have or obtain any vested interest in the
said benefit until the same has become due and payable
upon the death of the said member; provided, that any
society may by its laws limit the scope of beneficiaries
within the above classes."

It will be noted that the foregoing statute limits those
who may be named as beneficiaries in a benefit certificate,
and provides that a son-in-law may be designated as bene-
ficiary.

It is insisted, however, that, at the time the benefit cer-
tificate which the insured, Mrs. Allen, held in the United
Order of the Golden Cross of the World was changed so
as to name the defendant Cunningham as beneficiary there-
in, the relationship of son-in-law and mother-in-law be-
tween the defendant and Mrs. Allen had been terminated
by the death of the defendant's wife, and that relationship
no longer subsisted, and that he could not, therefore, be
legally designated as a beneficiary in said certificate upon
the ground that he bore the relationship of son-in-law to
the insured.

In Corpus Juris, vol. 2, p. 379, it is said:

"Death of the spouse terminates the relationship by affinity."

In the note to the text quite a number of cases are cited in support of this rule, among them the cases of *Wilson* v. *State,* 100 Tenn., 596, 46 S. W., 451, 66 Am. St. Rep., 789, and *Goodall* v. *Thurman,* 1 Head, 209.

In the case of *Wilson* v. *State,* supra, it was held by this court that the relationship of brother-in-law and sister-in-law was terminated by the death of the wife of the brother-in-law.

In *Goodall* v. *Thurman,* supra, it was held that the relationship by affinity is dissolved by the death of the party by a marriage with whom the relationship was created. Hence, a juror whose wife is dead is competent, although by his marriage he was related to one of the parties to the suit within the prohibited degree.

We are of the opinion, therefore, that the defendant Cunningham could not legally be designated as beneficiary in said certificate on account of the relationship of son-in-law, because under the rule announced in the cases referred to that relationship had been terminated.

But it is insisted by counsel for the defendant Cunningham that, if he were not entitled to be named as beneficiary on the ground that he was a son-in-law of Mrs. Allen, he can properly be classed as a dependent, because Mrs. Allen lived in the house with him and looked after his household affairs, prepared his meals, or saw that they were prepared, and performed many other acts of favor for him, and assisted him in various ways; and that as

such dependent he is entitled to the proceeds of said benefit certificate.

We do not think this contention is sound. It is true that Mrs. Allen lived in the home of the defendant for a number of years prior to her death, and looked after his household affairs, saw that his meals were prepared, and did many other acts of favor for him; but she was neither under a legal or moral obligation to do so. The defendant was in no way dependent upon Mrs. Allen for assistance, or for maintenance and support. Upon the other hand, the uncontroverted proof shows that Mrs. Allen was dependent upon the defendant for her support and maintenance; she being without means to support herself.

In *Ownby* v. *Supreme Lodge K. of H.,* 101 Tenn., 16, 46 S. W., 758, it was held that a benefit certificate in favor of one for whom the member is under no legal or moral obligation to provide cannot be sustained as being for a person dependent upon the member, although the latter may have bestowed gifts and charities upon such person, and had contemplated and promised to bestow others.

In R. C. L., vol. 19, section 79, it is said:

"To be eligible as a beneficiary within the meaning of this limitation (dependent) one must be dependent upon a member in a material degree for support, and it has been held that the term 'dependent' does not include a landlady, or a hired servant, a creditor, or one who promises to take care of a member for life in consideration of the latter leaving him his benefit. On the other hand, it is obvious that the wife and minor children of a member

are embraced within this class. . . . The mere fact of relationship to the insured does not render eligible as a beneficiary a mother, brother, sister, or fiance, or a divorced wife. Nor does the term 'dependent' apply to a grown up son, who has ceased to be dependent upon his father, or an illegitimate child, to whose support its father contributes nothing, or the stepfather of a member. Any one of these persons, however, may be eligible as a 'dependent' if actually relying upon a member in a material degree for support. . . . Furthermore, it has been declared that to constitute one a 'dependent' within the meaning of the term as used in the rules and regulations of benevolent associations, it is not only essential that the beneficiary be dependent upon the member in a material degree for support or maintenance, but the obligation on the part of the member to furnish it must rest upon some moral, legal, or equitable ground, and not upon the purely voluntary or charitable impulse or disposition of the member."

To the same effect is the rule announced in the cases of *Caldwell* v. *Grand Lodge of United Workmen*, 148 Cal., 195, 82 Pac., 781, 2 L. R. A. (N. S.), 653, 113 Am. St. Rep., 219, 7 Ann. Cas., 356; *McCarthy* v. *Supreme Lodge, etc.*, 153 Mass., 314, 26 N. E., 866, 11 L. R. A., 144, 25 Am. St. Rep., 637; *Palmer* v. *Welch*, 132 Ill., 141, 23 N. E., 412.

Now, reverting to the assignment urged by the complainants to the effect that the defendant cannot be reimbursed out of the proceeds of said certificate to the amount of the assessments paid by him by which the certifi-

cate was kept in force and the insurance made possible. It would be, indeed, a harsh rule of equity that would deny him this right. To deny him this right would defeat the express and primary purpose which prompted Mrs. Allen to have said certificate made payable to him.

In *Brown* v. *Bigley,* 3 Cooper's Chancery, 618, 624, it is said:

"The inclination of the courts of this country, and of none more so than those of this State, has been to enlarge the doctrine of equitable liens and charges, with a view to the attainment of the ends of justice without much respect for the technical restrictions of the common law."

Mr. Pomeroy, in his work on Equity Jurisprudence (volume 3, section 1243), says:

"Where a person, not being an owner of a policy of life insurance, nor bound to pay the premium, but having some claim or color of interest in it, voluntarily pays the premiums thereon, and thus keeps it alive for the benefit of a third party, he may thereby acquire an equitable lien on the proceeds of the policy as security for the repayment of his advances."

In *Milam* v. *Milam,* 138 Tenn., 686, 200 S. W., 826, this court said:

"An equitable lien, strictly speaking, is not *a jus in re* or *a jus ad rem,* but is the right to have the property subjected in a court of equity to the payment of the claim. It is a floating equity until action by the court is invoked.

" 'Even in the absence of an express contract, a lien, based upon the fundamental maxims of equity, may be

implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings' "—citing 17 R. C. L., p. 603; 3 Pomeroy, Eq. Jurisp., sections 1237, 1239; *Westall* v. *Wood,* 212 Mass., 540, 99 N. E., 325.

In *Scobey* v. *Waters,* 10 Lea, 551, it was held that premiums which have been paid by an assignee of a policy of insurance under a void assignment of an infant beneficiary thereof are an equitable lien on the proceeds of the policy in favor of the assignee.

In *Insurance Co.* v. *Dunscomb,* 108 Tenn., 724, 735, 69 S. W., 345, 58 L. R. A., 694, 91 Am. St. Rep., 769, this doctrine was reaffirmed, and it was held that even where the assignment was void for the want of insurable interest in the assignee, or for other reasons, nevertheless the assignee is entitled to be reimbursed out of the insurance for the premiums paid by him.

To the same effect is the holding of this court in the cases of *Bendet* v. *Ellis,* 120 Tenn., 277, 111 S. W., 795, 18 L. R. A. (N. S.), 114, 127 Am. St. Rep., 1000, and *Quinn* v. *Catholic Knights,* 99 Tenn., 80, 41 S. W., 343.

It is insisted by complainants that, under the provisions of section 3369a111 of Shannon's New Code, reimbursement to the defendant for the assessments paid by him cannot be decreed. The provisions of this section are:

"No money or other benefit, charity, or relief, or aid to be paid, provided, or rendered by any such society shall be liable to attachment, garnishment, or other process, or

Allen v. Cunningham.

be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, or any other person who may have a right thereunder, either before or after payment."

We are of the opinion that this statute has reference to general and ordinary debts of the insured or beneficiary, and not to assessments or money paid by which the benefit is created and made possible. Especially is this true where it appears that the insured assigned or had transferred to the person paying the dues or assessments the certificate for the primary and express purpose of reimbursing him for the payments made, though it turned out that the assignment was void. We think that a court of equity has the power, notwithstanding the statute referred to, to compel the complainants, who are seeking its aid, to do equity by reimbursing the defendant, who contributed his money to the creation and preservation of a fund, which, owing to the void assignment or transfer of the certificate to the defendant, inured to complainants' benefit.

The statute relied on by complainants is not unlike chapter 142 of the Acts of 1875 (Shannon's Annotated Code, section 2265), which provides:

"When policies of insurance are effected by any person on his life, for the benefit of his wife, or for the benefit of any one or more of his children or for the joint benefit of his wife and children, the creditors of the person thus insuring shall have no claim on the proceeds of the policy,

and the same shall inure to the persons for whose benefit the insurance was effected."

And chapter 216 of the Acts of 1845-46 (Shannon's Annotated Code, section 4030), which provides:

"A life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors."

The above-quoted statutes were in force at the time the cases of *Scobey* v. *Waters, Insurance Co.* v. *Dunscomb, Bendet* v. *Ellis,* and *Quinn* v. *Catholic Knights,* supra, were decided, and we cannot think that the court deciding those cases was unmindful of these statutes.

Counsel for complainants cite some cases from other jurisdictions which seem to support his contention, but we are content to follow the rule announced in our own cases.

We find no error in the decree of the chancellor, and it will be affirmed.

The costs of this court will be taxed one-half against the complainants, and the remaining half against the defendant. The costs of the court below will stand as adjudged by the chancellor.